UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL SANCHEZ,

                Plaintiff,

    -against-

JOSE VELEZ, FRANCISCO CARABALLO,
FRANCISCO MALAVE, AND JOHN V.
WERLAU

                Defendants.

15-cv-2037 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Michael Sanchez ("Plaintiff"), proceeding *pro se*, brings this action against

Defendants Jose Velez ("Officer Velez"), Francisco Caraballo ("Officer Caraballo"), Francisco

Malave ("Sergeant Malave"), and John Werlau ("Lieutenant Werlau") (collectively,

"Defendants") alleging violations of his rights under the Eighth and Fourteenth Amendments.

Plaintiff filed a Complaint against Defendants on March 13, 2015. (ECF No. 2.) On April 27,

2012, Judge Preska ordered that Plaintiff amend his Complaint in order to detail his claims. On

June 5, 2015, Plaintiff filed an Amended Complaint. (ECF No. 7.) Defendants filed a motion to

dismiss the Amended Complaint for failure to state a claim on January 4, 2015, and that motion

is currently before the Court.   For the following reasons, Defendants' motion is GRANTED on

the merits without opposition.

## BACKGROUND

    The following facts are taken from Plaintiff's Amended Complaint unless otherwise

noted, and are accepted as true for purposes of this motion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6 | 24 | 2016

On March 26, 2012, at approximately 7:30 p.m., Officer Caraballo searched Plaintiff's cell at Sing Sing correctional facility without authorization from his superior. (Amended Complaint, ECF No. 7, at 2.) Plaintiff was not at his cell at the time of the search, because it was during a recreation period. (*Id*. at 2.) Officer Caraballo discovered three pages of handwritten material in the cell and confiscated it for the lieutenant's review. (*Id*. at 3.) Plaintiff was then placed on 72-hour investigation. (*Id*. at 3.) Following the investigation, Plaintiff was released without any misbehavior report. (*Id*. at 3.) Later that day, Plaintiff encountered Officer Caraballo at the medication clinic, where they exchanged words regarding the unauthorized cell search. (*Id*. at 3.)

Following the confrontation at the medication clinic, Officer Caraballo gave the confiscated material to Officer Velez for translation and review. (Amended Complaint attachment Misbehavior Report, ECF No. 7.) Officer Velez then concluded the confiscated pages were gang-related materials that contained recruitment information and rank structures for the gang the "Latin Kings." (Amended Complaint attachment Misbehavior Report, ECF No. 7.) Officer Velez authorized an Inmate Misbehavior Report, which indicated that Plaintiff was in possession of gang-related materials. (Amended Complaint, ECF No. 7, at 3.) Officer Caraballo endorsed the report by Officer Velez. (*Id.* at 3.) On April 7, 2012, Plaintiff was served with the Inmate Misbehavior Report. (*Id*. at 3.)

Following the Inmate Misbehavior Report, Plaintiff was scheduled to have a disciplinary misbehavior hearing on April 12, 2012. (*Id.* at 3.) Prior to the misbehavior hearing, Plaintiff was assigned Sergeant Malave as an employee assistant to aid him with the hearing. (*Id*. at 3.) Plaintiff requested several documents from Sergeant Malave, including "To/From investigation

reports"[1] and a list of all the lieutenants who were working on March 26, 2012—the day of the cell search. (*Id*. at 3.) Sergeant Malave refused to provide Plaintiff with the lieutenant list requested because he felt the list would not be relevant. (*Id*. at 3.) Sergeant Malave also refused to provide Plaintiff with the "To/From investigation reports," claiming that those type of documents did not exist. (*Id*. at 3.) Plaintiff then refused to sign Sergeant Malave's assistant form because he had not provided the forms Plaintiff had requested. (*Id*. at 3.)

On April 12, 2012, Lieutenant Werlau presided over Plaintiff's disciplinary hearing on the charges in the misbehavior report. (Amended Complaint attachment A, ECF No. 7, at 1.) Lieutenant Werlau held that the March 26 cell search was approved by Watch Commander Sgt. Arlene Ocana. (*Id*. at 1.) He also held that no "To/From investigation reports" existed. (*Id*. at 1.) However, Plaintiff claims that during the hearing, Lieutenant Werlau read the "To/From reports" into the hearing record, despite Plaintiff's objection to not do so. (*Id*. at 1.) Plaintiff was found guilty of possessing gang-related material at the conclusion of the hearing. (*Id*. at 1.) The Amended Complaint contains no facts indicating what penalty Plaintiff was assessed. (Defendant's Memorandum of Law, ECF No. 20, at 3.)

Months after the disciplinary hearing, Plaintiff requested several documents from the Freedom of Information Law ("FOIL") department regarding the cell search and his disciplinary hearing. (Amended Complaint attachment A, ECF No. 7, at 1.) Plaintiff claims that, upon receiving documents from FOIL, he became aware of the possible claims he had against the four defendants. (*Id*. at 1.) These documents included information that showed Officer Velez was not working on the day of March 26, 2012 as he stated on the Inmate Misbehavior Report. (*Id*. at 1.)

---

[1] Throughout the Amended Complaint, Plaintiff references "To/From Investigation Reports" that he requested from the correctional facility. It is unclear to the Court what documents Plaintiff is referring to, but an inference can be made that they pertain to the identities and locations of the officers who conducted Plaintiff's search.

Plaintiff alleges that the fact Officer Velez was not working that day provides evidence that he fabricated the misbehavior report to help Officer Caraballo retaliate against Plaintiff following their exchange of words at the medical center. (*Id*. at 1.) The documents also provided information that revealed that Sergeant Malave was working on tour with Officer Caraballo prior to the cell search. (*Id*. at 1.) Plaintiff alleges that Sergeant Malave did not provide adequate guidance because he was working with Officer Caraballo prior to the search, inferring that Sergeant Malave was biased. (*Id*. at 1.) Plaintiff also contends that the collected information demonstrates that Lieutenant Werlau conducted the hearing in a way that enabled him to further frame Plaintiff for possessing gang-related material. (*Id*. at 1-2.) Specifically, the information shows that Lieutenant Werlau conducted the hearing despite not being assigned to it and failed to state that he participated in the investigation of the misbehavior report prior to the hearing. (*Id*. at 2.) An officer who participates in an investigation of certain acts is prohibited from later participating in a hearing concerning those acts. (*Id*. at 2.) Plaintiff also discovered that Lieutenant Werlau lied about who gave Officer Caraballo permission to search his cell, as it was not Officer Ocana, but Segeant William Casanas, who did not have proper authorization. (*Id*. at 2.) When Plaintiff requested the specific contraband report—a document pertaining to the gang-related information found in his cell—the FOIL office replied that they could not locate the report. (*Id*. at 2.)

Plaintiff contacted the New York State Department of Corrections and Community Supervision ("DOCCS") Office of Special Investigations regarding the information he discovered from the FOIL department's documents. (*Id*. at 2.) However, Plaintiff did not file a grievance with DOCCS, because the deadline to file a grievance is 21 days after the incident occurs, and Plaintiff did not discover the "real facts" relevant to his grievance until months later,

following the FOIL document requests. (Amended Complaint, ECF No. 7, at 5.) Plaintiff also did not file for an extension for the grievance. (Defendant's Memorandum of Law, ECF No. 20, at 6.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

*"Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal." Thomas v. Westchester,* No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N .Y. July 3, 2013); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). The

court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Paboti v. Wright,* 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs ... cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.,* 663 F.Supp.2d 379, 387 (S.D.N.Y.2009) (internal citations and alterations omitted).

Where a Plaintiff fails to oppose a motion to dismiss a complaint for failure to state a claim, automatic dismissal is not merited. In such a situation, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000). As with all Rule 12(b)(6) motions, on an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* at 322. "If a complaint is sufficient to state a claim on which relief can be granted on its face, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12 CIV. 1343 ALC, 2013 WL 1234836, at *5 (S.D.N.Y. Mar. 26, 2013).

## DISCUSSION

### I.    Statute of Limitations

Plaintiff filed a timely Complaint with the court, and therefore, Defendants cannot raise a statute of limitations defense. There is no federal statute of limitations for 42 U.S.C. § 1983 claims. When a statute of limitations is not expressed in a statute, courts will apply the general personal injury statute of limitations of the relevant state. *Owens v. Okure*, 488 U.S. 235 (1989).

Under New York Law, CPLR § 214, the general personal injury action statute of limitations is three years from the incident. N.Y. C.P.L.R. § 214 (McKinney 2016). Thus, 42 USC 1983 actions that are filed in New York are subject to a three-year statute of limitations. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).

Defendants argue that because the Amended Complaint was filed on June 5, 2015, after the three-year statute of limitations deadline, the case should be dismissed as time-barred. However, Plaintiff's Original Complaint was filed on March 13, 2015, before three years had passed. Pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, an amended complaint relates back to the date of the original pleading. Rule 15(c)(1)(B) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. All of the defendants are named in the original Complaint. No additional claims are asserted in the Amended Complaint that were not in the original Complaint. Plaintiff's Amended Complaint simply clarifies facts and adds details to claims set out in the original pleading. Thus, the amendment arises out of the same conduct set forth in the original pleading, and the amendment relates back for purposes of timeliness. *See Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013). Therefore the case is not time-barred, and the Amended Complaint may not be dismissed on those grounds.

## II.     Failure to Exhaust Available Administrative Remedies

Defendants' motion to dismiss the Complaint on the basis that Plaintiff failed to exhaust all administrative remedies available to him, as required under the Prison Litigation Reform Act of 1995 ("PLRA"), is granted. Under the PLRA "[n]o action shall be brought with respect to prison conditions under section 1983 of this title… by a prisoner confined in any jail, prison, or

7

other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997(e); *see also Aramark Foods*, 2016 WL 1746060, at *2. Exhausting all remedies

"means using all steps that the agency holds out, and doing so properly (so that the agency

addresses the issues on the merits)." *Washington v. Chaboty*, No. 09 CIV. 9199 PGG, 2015 WL

1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d

Cir. 2009)). The defendants have the burden of proof to demonstrate that the plaintiff's claim is

not exhausted. *Aramark Foods*, 2016 WL 1746060, at *2 (citing *Key v. Toussaint*, 660 F.Supp.2d

518, 523 (S.D.N.Y. 2009)). Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if

such failure is evidenced on the face of the complaint and incorporated documents.  *Aramark*

*Foods*, 2016 WL 1746060, at *2 (citing *Sloane v. Mazzuca*, No. 04–CV–8266, 2006 WL

3096031, at *4 (S.D.N.Y. Oct. 31, 2006).

  An inmate in the custody of DOCCS must follow the three-step process for the Inmate

Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701.5. First, the inmate must file a complaint

with the Inmate Grievance Resolution Committee ("IGRC"). The inmate must file this complaint

within 21 days of the alleged occurrence. *Id.* § 701.5(a). The committee will then issue a decision

on the grievance. *Id.* §701.5(a)-(b). The inmate may appeal the decision to the superintendent by

completing the appeal section of the IGRC response form. *Id.* § 701.5(c). Finally, the inmate may

appeal the superintendent's decision to the Central Office Review Committee ("CORC") by

submitting the appropriate form to the grievance clerk within seven calendar days of the

superintendent's response. *Id.* § 701.5(d). Exceptions to this time limit, or any appeal time limits,

may be approved by the IGP supervisor for mitigating circumstances under 7 N.Y.C.R.R.

701.6(g). *Id.* § 701.5(a).

It is clear from the face of the Amended Complaint that Plaintiff did not file a grievance with the IGRC, and therefore, Plaintiff did not exhaust the administrative remedies that were available to him. Though Plaintiff claims that he did not have all of the necessary information and documents to support his claims until months after the unauthorized search; such argument falls flat. Essentially, Plaintiff claims that the cell search was conducted without permission, that the contraband found in his cell and the other evidence used against him at the hearing was fabricated, and that he was not afforded proper procedural due process before and during the administrative hearing. Plaintiff was well aware of these allegations prior to obtaining the additional information in the FOIL documents. In fact, his factual assertions in support of these claims are what prompted him to make the FOIL request in the first place. For example, one of the documents that Plaintiff claims was fabricated and used to frame him was the Inmate Misbehavior Report written by Officer Velez. The disciplinary hearing conducted was a result of what was written on that report and Plaintiff was aware of this information contained within the report following the administrative hearing. Plaintiff did not to rely exclusively on the FOIL documents and was in possession of sufficient information to allege the documents were fabricated soon after or immediately following the hearing. Thus, Plaintiff had adequate time to grieve his complaints. Accordingly, Plaintiff's contention that he did not know the "real facts" until after receiving the FOIL documents and could not grieve his complaints is not factually supported.

In any event, Plaintiff may only be excused from the exhaustion requirement in narrow circumstances, and Plaintiff does not allege sufficient facts that give rise to any of the applicable exceptions. As the Supreme Court recently held in *Ross v. Blake,* the PLRA exhaustion

requirement may only be waived when an administrative remedy is unavailable.[2] *Ross*, 2016 WL 3128839 at *1. The court went on to define the instances in which an administrative remedy is considered unavailable, which are: (1) when exhaustion operates as a dead end, and "officers are unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when "an administrative scheme might be so opaque that it becomes... incapable of being used," or (3) "when prison administrators thwart inmates from using the grievance process through machination, misrepresentation, or intimidation." *Id.* at 9-10. Plaintiff has not alleged any facts that would demonstrate that his case falls within any of the three instances of unavailability. Plaintiff was aware of the grievance process and failed to avail himself of it. Therefore, Plaintiff has failed to exhaust his administrative remedies and the Amended Complaint should be dismissed in its entirety.

## III.   Defendants' Remaining Arguments

The Court need not examine Defendants' remaining arguments, as Plaintiff's failure to exhaust his administrative remedies requires dismissal of the entire Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Court respectfully directs the Clerk to terminate the motion at ECF No. 19 and to close the case.

Dated:   June 24, 2016
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[2] Prior to the decision in *Ross*, there were three situations in which a Plaintiff is not required to satisfy the PLRA exhaustion requirement. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). In the Second Circuit, a prisoner was excused from exhaustion (1) when administrative remedies are not available to the prisoner, (2) when the defendants were estopped from raising an exhaustion defense, or (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement. Following the *Ross* decision, the special circumstances exception has been abrogated, and the Court now follows the three instances in which remedies are considered unavailable enumerated in *Ross*.